**Richard Melvin JOHNSON, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 22, 2002.

Decided July 30, 2002.

Reargument Denied Sept. 20, 2002.

Barbara C. Litten, Tionesta, for appellant.

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellee.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

Opinion by Judge SMITH–RIBNER.

Richard Melvin Johnson (Appellant) appeals from the September 7, 2001 order of the Court of Common Pleas for the 37th Judicial District, Forest County Branch (trial court), which affirmed the Department of Transportation's (DOT) one-year suspension of Appellant's driving privileges. Appellant, a bilateral amputee, was convicted on June 20, 2000 of driving under the influence of alcohol (DUI) in violation of Section 3731 of the Vehicle Code, *as amended*, 75 Pa.C.S. § 3731, resulting in DOT's suspension pursuant to Section 1532(b) of the Vehicle Code, *as amended*, 75 Pa.C.S. § 1532(b). The trial court concluded that DOT's suspension did not violate the non-discrimination provision of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101–12213.

Appellant raises two questions for review: whether an individual who meets all of the essential eligibility requirements to receive some service from a public entity as defined by the ADA, and was receiving a service at the time the public entity sought to suspend the service, is a "qualified individual with a disability" as defined by Title II of the ADA, 42 U.S.C. § 12131(2); and whether Section 1532(b) of the Vehicle Code violates Article VI, Clause 2 of the United States Constitution, commonly referred to as the Supremacy Clause, because it does not permit DOT, as a public entity, to make reasonable accommodations for the needs of a qualified individual with a disability required by the ADA.[1] In his appeal of the suspension, Appellant claimed that DOT was required to make reasonable accommodations as he was a qualified individual with a disability, and his suspension was discriminatory be-

---

1. A qualified individual with a disability is defined as:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2).

Although Appellant refers to Section 1532(b) of the Vehicle Code generally in his statement of questions, he specifically references Section 1532(b)(3) in his argument. Section 1532(b)(3) provides, in pertinent part, that "[t]he department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3731 (relating to driving under the influence of alcohol or controlled substance) ...."

cause it was overly restrictive and unfairly confined him to his home when a non-disabled person would not be so confined.

The trial court conducted a de novo hearing, at which DOT entered in the record a packet of documents, which included a certified report of Appellant's DUI conviction. The court found that Appellant has been a paraplegic since 1962 and that due to his condition the lower portions of both his legs were amputated in 1990. He is self-sufficient and resides in a modified home with ramps, widened doorways and other alterations to accommodate his wheelchair. Appellant testified that he drives a vehicle equipped with hand-controls, a lift and electric doors that he uses to get his mail and medical supplies and to travel to his physicians located two hours away. Also his town does not have sidewalks and his medical problems preclude him from relying on public transportation. The town does not provide home mail delivery, which creates a problem because Appellant receives his medical supplies through the mail. Since the suspension, Appellant has relied on an elderly friend to transport him locally, but he has no local family or friends to drive him to see his doctors. He does not dispute his conviction for DUI.

The trial court concluded that Appellant's suspension did not violate the ADA because he was not a qualified individual with a disability for purposes of Section 12131(2), 42 U.S.C. § 12131(2): he was not eligible for a license by virtue of his DUI conviction. The court indicated that to state a claim under the non-discrimination provision of the ADA, 42 U.S.C. § 12132, a plaintiff must prove that he or she is a qualified individual with a disability, that he or she was excluded from participation in or denied benefits of some services provided by a public entity and that the exclusion, denial of benefits or discrimination was because of the plaintiff's disability.[2] *See Crowder v. Kitagawa,* 81 F.3d 1480 (9th Cir.1996). In rejecting Appellant's contention that he was a qualified individual with a disability, the court relied on applicable statutory language, on federal cases and on *Cohen v. Department of Transportation, Bureau of Driver Licensing,* 704 A.2d 712 (Pa.Cmwlth.1997), and *Firman v. Department of State, State Board of Medicine,* 697 A.2d 291 (Pa. Cmwlth.1997). The court did not address whether Section 1532(b) of the Vehicle Code violated the U.S. Constitution because it did not permit DOT to make reasonable accommodations to meet his needs.[3]

Appellant contends that he does not need to show discrimination to state a claim under the ADA because he is a qualified individual with a disability, citing *Helen L. v. DiDario,* 46 F.3d 325 (3d Cir.1995). He quotes the definition of a qualified individual with a disability as stated above as well as the definition of disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." *See* Section 12102(2)(A) of the ADA, 42 U.S.C. § 12102(2)(A). He also describes the process that one must follow to

---

**2.** Section 12132 of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

**3.** This Court's review of the trial court's order is limited to determining whether the trial court's findings of fact are supported by substantial evidence, whether the court made errors of law or whether it committed an abuse of its discretion. *Hession v. Department of Transportation, Bureau of Driver Licensing,* 767 A.2d 1135 (Pa.Cmwlth.2001).

obtain a driver's license in this Commonwealth. Appellant argues that, because he had a valid license at the time DOT instituted suspension proceedings and he continues to hold his license pursuant to a supersedeas order entered by the trial court, he meets the essential eligibility requirements for a driver's license and that DOT as a public entity must make all reasonable accommodations for him.[4]

DOT concedes that Appellant's physical condition clearly satisfies the definition of a disability under the ADA, but it disputes that Appellant is a qualified individual with a disability. DOT indicated that it has taken appropriate steps to accommodate Appellant's actual disability by allowing him to drive a van that has been appropriately modified; however, it is not the lack of reasonable accommodations of his disability that caused Appellant's suspension. Rather, it was Appellant's DUI conviction that precludes him from driving, and the ADA does not require DOT to accommodate his drinking and driving. Therefore, the only issue is whether Appellant's driving privileges were properly suspended in accordance with Section 1532(b) of the Vehicle Code.

DOT relies essentially on *Firman* and *Cohen,* among other state and federal cases that it cited. In *Firman* a registered nurse-midwife pled guilty to obtaining a controlled substance by fraud and to possession of a controlled substance, and the State Board of Medicine suspended her nursing-midwifery license pursuant to Section 40(b) of the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, *as amended,* 63 P.S. § 422.40(b). The Court rejected Firman's argument that Section 40(b) violated Title II of the ADA because it provided more severe sanctions for drug-related felony crimes, concluding

that the automatic license suspension was based on her misconduct rather than on her disabled status as a drug addict. The Court also rejected Firman's claim of a nexus between her conduct and her disability, concluding that conduct and status are "conceptually distinct and misconduct is a permitted basis upon which the Board may act to make licensing decisions." *Id.* at 294.

In *Cohen* DOT recalled the licensee's operating privileges after DOT received a medical report indicating that the licensee did not meet the vision qualifications to maintain operating privileges. DOT's recall was effected pursuant to Section 1519(c) of the Vehicle Code, *as amended,* 75 Pa.C.S. § 1519(c), which authorizes DOT to recall operating privileges when a licensee's incompetency has been established. The licensee appealed on due process grounds and sought attorney's fees and costs under Section 12205 of the ADA, 42 U.S.C. § 12205. The Court concluded that the licensee did not suffer a disability as defined by Section 12131(2). Likewise, the licensee could not meet the definition of a qualified individual with a disability because he did not satisfy the essential licensing requirements based on his visual impairment. Consequently, DOT's recall of the operating privileges did not violate the ADA's non-discrimination provision.

 There is no dispute that Appellant is disabled inasmuch as he suffers a physical impairment that substantially limits a major life activity. *See Taylor v. Phoenixville School District,* 184 F.3d 296 (3d Cir.1999). Nor is there any dispute that DOT is a public entity within the meaning of the ADA. However, in order to be considered a qualified individual with a disability under Section 12131(2), Appel-

---

4. A public entity includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

lant must meet the essential eligibility requirements for participation in programs or activities provided by DOT. Courts have defined essential eligibility requirements as those requirements reasonably necessary to accomplish the purpose of a program or activity provided by a public entity. *Pottgen v. Missouri State High School Activities Ass'n*, 40 F.3d 926 (8th Cir. 1994); *Bowers v. National Collegiate Athletic Ass'n*, 974 F.Supp. 459 (D.N.J.1997).

■ Section 1532(b)(3) of the Vehicle Code provides that DOT shall suspend the operating privileges of any driver for a year upon receiving a certified record of the driver's conviction. Although Appellant originally met licensing requirements, he no longer met essential eligibility requirements to hold a license after his DUI conviction. Stated another way, while Appellant suffers a disability, he did not demonstrate that he met eligibility requirements for operating a vehicle in the Commonwealth. He has not shown that he is capable of safe driving, not because of his physical disability, but because of his driving under the influence of alcohol over the legal limit set by the legislature. DOT's licensing requirements are reasonably necessary to accomplish the purposes of protecting the traveling public in the Commonwealth from drivers who drink.

■ Because Appellant does not meet the eligibility requirements for maintaining his operating privileges, the Court may not consider him to be a qualified individual with a disability as the ADA defines. *Cohen.* Since DOT suspended Appellant's operating privileges due to his misconduct, DOT has not discriminated against Appellant in violation of Section 12132 of the ADA. As a result, no basis exists for considering Appellant's contention that the ADA requires DOT to make reasonable accommodations for Appellant's disability to avoid further disadvantage to him by virtue of his disability. While sympathetic to Appellant's physical circumstances, the Court cannot impose reasonable accommodations requirements upon DOT when not allowed by law to do so.[5] Finding no error of law or abuse of discretion by the trial court, the Court affirms.

### *ORDER*

AND NOW, this 30th day of July, 2002, the order of the Court of Common Pleas for the 37th Judicial District, Forest County Branch, is hereby affirmed.

---

**5.** DOT argues that it is not subject to ADA claims in federal or state courts because Congress did not abrogate state immunity under the Eleventh Amendment to the U.S. Constitution when it enacted Title II of the ADA and because the Commonwealth has not waived its sovereign immunity to claims under the ADA pursuant to Section 8522 of the Judicial Code, *as amended*, 42 Pa.C.S. § 8522 (exceptions to sovereign immunity). DOT recognizes that these issues were not raised before the trial court, but it asserts instead that it may raise immunity issues at any time.

Nonetheless, because of the Court's disposition in this appeal, the Court sees no need to address DOT's immunity arguments or those related to DOT's contention that Appellant's license suspension is not a service, program or activity under Section 12132 of the ADA. In any event, when a case raises both constitutional and non-constitutional issues, the court should not reach the constitutional issues if the case may properly be decided on non-constitutional grounds. *C.B. ex rel. R.R.M. v. Department of Public Welfare*, 567 Pa. 141, 786 A.2d 176 (2001).